IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ELI ESCALERA, :
:
:
Petitioner, :
:
v. : Civil Action No. 21-1331-JLH
:
BRIAN EMIG, Warden, and ATTORNEY :
GENERAL OF THE STATE OF :
DELAWARE, :
:
Respondents.[1] :

---

Eli Escalera. *Pro se* Petitioner.

Andrew J. Vella, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

---

**MEMORANDUM OPINION**

September 12, 2024
Wilmington, Delaware

---

[1]The Court has substituted Warden Brian Emig for former Warden Robert May, an original party to the case. *See* Fed. R. Civ. P. 25(d).

Hall, District Judge:

Petitioner Eli Escalera filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 alleging two grounds of relief (D.I. 1), followed by an amended habeas petition adding two more grounds (D.I. 5 ("Petition")). The State filed an Answer (D.I. 8), and Petitioner filed a Reply (D.I. 15). On January 31, 2024, the case was reassigned to me. For the reasons set forth below, the Court will deny the Petition.

I.  **BACKGROUND**

> In the evening of June 29, 2016, Amoni Green was waiting for her boyfriend at a bus stop when a stranger—later identified as [Petitioner]—advanced toward her, wielding a black knife in his right hand. Green ran into the median of Route 13 and flagged down Officer Michael Zolnowski of the New Castle County Police Department who happened to be driving by. As Officer Zolnowski pulled into a parking lot adjacent to the bus stop, [Petitioner] began walking away. Green saw [Petitioner] flick his wrist in the direction of a nearby fence. A witness to the altercation between [Petitioner] and Green placed a call to 911 and described the aggressor as wearing a green shirt and tan shorts. Officer Zolnowski took [Petitioner]—who was wearing a green collared shirt and tan shorts and was unarmed—into custody at the scene. Another responding officer recovered a black knife from the area where Green observed [Petitioner] snap his wrist.

*Escalera v. State*, 258 A.3d 147 (Table), 2021 WL 3414230, at *1 (Del. Aug. 4, 2021). On October 24, 2016, a New Castle County Grand Jury indicted Petitioner on one count each of aggravated menacing, possession of a deadly weapon during the commission of a felony ("PDWDCF"), possession of a deadly weapon by a person prohibited ("PDWBPP"), resisting arrest, and disorderly conduct. (D.I. 9-4 at 14–16.) Prior to trial, the Superior Court granted Petitioner's request to sever the PDWBPP charge from the other charges. (D.I. 9-1 at Entry No. 10.) In April 2017, a Delaware Superior Court jury convicted Petitioner of aggravated menacing, PDWDCF,

and disorderly conduct, and acquitted him on the resisting arrest charge. *See Escalera*, 2021 WL 3414239, at *1. After the jury's verdict, the Superior Court held a bench trial and convicted Petitioner of the severed PDWBPP charge. *See id.*

On August 11, 2017, the Superior Court sentenced Petitioner as a habitual offender for the PDWDCF conviction to 25 years at Level V with no probation. (D.I. 9-3.) The Superior Court sentenced Petitioner as a non-habitual offender for the other convictions as follows: for the aggravated menacing conviction, 5 years at Level V incarceration suspended immediately for 4 years at Level IV, suspended after six months at Level III supervision; for the PDWBPP conviction, 3 years at Level V incarceration suspended immediately for 1 year at Level II supervision; and, for the disorderly conduct conviction, a fine. (D.I. 9-3.) The Delaware Supreme Court affirmed Petitioner's convictions on May 25, 2018. *See Escalera*, 187 A.3d 1249 (Table), 2018 WL 2406009, at *3 (Del. May 25, 2018).

Petitioner filed a *pro se* motion for postconviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion") on December 14, 2018, along with a motion for appointment of counsel. (D.I. 9-16; D.I. 9-17.) The Superior Court appointed counsel, who filed a motion to withdraw on October 21, 2019. (D.I. 9-1 at Entry No. 58; D.I. 9-18.) Petitioner filed a *pro se* amended Rule 61 motion on January 21, 2020. (D.I. 9-1 at Entry No. 66; D.I. 9-11 at 125–134.) On October 30, 2020, the Superior Court denied Petitioner's Rule 61 motion and granted postconviction counsel's motion to withdraw. *See State v. Escalera*, 2020 WL 6376646, at *4 (Del. Super. Ct. Oct. 30, 2020). The Delaware Supreme Court affirmed that judgment on August 4, 2021. *See Escalera*, 2021 WL 3414230.

## II.   LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (citation omitted). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

### B. Standard of Review

When a state's highest court has adjudicated a federal habeas claim on the merits,[2] the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the state court proceeding. 28 U.S.C. § 2254(d)(1),(2); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001).

---

[2] A claim has been "adjudicated on the merits" for purposes of § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).

3

A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. The mere failure to cite Supreme Court precedent does not require a finding that the decision is contrary to clearly established federal law. *See Early v. Packer*, 537 U.S. 3, 8 (2002). A decision may comport with clearly established federal law even if the decision does not demonstrate an awareness of relevant Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id.* An "unreasonable application" of clearly established federal law occurs when a state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of a prisoner's case." *Williams*, 529 U.S. at 413; *see also White v. Woodall*, 572 U.S. 415, 426 (2014).

### III. DISCUSSION

The Petition asserts the following four claims for relief: (1) trial counsel provided ineffective assistance by failing to obtain a DNA sample from the victim's boyfriend; (2) trial counsel provided ineffective assistance by not attempting to locate the caller who made the 911 call; (3) Petitioner's due process rights were violated when the State was permitted to play the 911 recording during the trial; and (4) Petitioner's conviction for PDWDCF was obtained in violation of his "due process rights under the Sixth and Fourteenth Amendments" because Count Two of the indictment stated the incorrect *mens rea* for PDWDCF. (D.I. 5 at 9.)

#### A. Claims One and Two: Ineffective Assistance of Trial Counsel

In order to establish a claim of ineffective assistance of counsel, a petitioner must satisfy the two-pronged standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984) and its

progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003); *Lewis v. Johnson*, 359 F.3d 646, 656 (3d Cir. 2004). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. "Because of the difficulties inherent in making th[is] evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal citation omitted). Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.*

Petitioner presented the IATC arguments in Claims One and Two to the Superior Court in his Rule 61 motion. The Superior Court denied the Claims as meritless, and the Delaware Supreme Court affirmed that decision "for the well-stated reasons given by the Superior Court in its October 30, 2020 order." *Escalera*, 2021 WL 3414230, at *2. Namely, the Supreme Court agreed with the Superior Court that Petitioner "is unable to satisfy either prong of the *Strickland* analysis." *Id.* Accordingly, Petitioner is only entitled to relief if the Superior Court's reasons for denying Claims One and Two, which the Supreme Court expressly adopted, were either contrary to, or an unreasonable application of, clearly established federal law or resulted from an unreasonable determination of the facts in light of the evidence presented. *Id.*

The Delaware Supreme Court correctly identified *Strickland* as setting forth the standard applicable to Petitioner's ineffective assistance claim. As for whether the Delaware Supreme

Court reasonably applied the *Strickland* standard to the facts of Petitioner's case and made a reasonable determination based on the evidence before it, the Court must view the Delaware Supreme Court's decision through a "doubly deferential" lens.[3] *Id.* at 105. When assessing the first prong, "the question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

### 1. Claim One: Counsel Failed to Obtain DNA Sample from Victim's Boyfriend

In Claim One, Petitioner contends trial counsel failed to "diligently weigh the options relative to sound strategy or tactic in defense of her client, even after DNA results produced a single strand of male DNA of an 'UNKNOWN MALE,' exonerating [P]etitioner of touching the knife." (D.I. 5 at 3.) Petitioner asserts that the DNA from the victim's boyfriend was a critical piece of evidence that would have demonstrated his innocence, and he believes trial counsel would have presented "a different defense altogether including pointing at the alleged victim's boyfriend" if counsel had investigated and obtained a DNA sample from the victim's boyfriend. (D.I. 5 at 5.)

The Superior Court rejected that argument, explaining (in pertinent part):

> Trial Counsel's decision not to collect the DNA was a reasonable trial strategy. Strategically, an attorney's decision not to request independent testing of DNA is within the range of reasonable judgments. At trial, it was established that DNA belonging to an unknown male was found on the knife, and that no conclusions

---

[3] As explained by the U.S. Supreme Court,

> [t]he standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).

*Harrington v. Richter*, 562 U.S. 86, 105 (2011) (internal citations omitted).

> could be made as to [Petitioner]. In her affidavit, Trial Counsel explained her concern that if the DNA results were not consistent with the victim's boyfriend, she would be prohibited from making the argument that another person pointed the knife and that would weaken her trial strategy. Additionally, the record reflects that Trial Counsel argued the issue of the unknown male's DNA on the knife in her closing argument. Thus, Trial Counsel's decision not to request DNA from the boyfriend was based on sound strategic reasoning. [Petitioner] cannot show that Trial Counsel's decision was professionally unreasonable[.]

*Escalera*, 2020 WL 6376646, at *3; *see also Escalera*, 2021 WL 3414230, at *2 (affirming on the basis that Petitioner failed to meet the first prong of *Strickland* "for the well-stated reasons given by the Superior Court").

Viewing the Delaware Supreme Court's decision under a "doubly deferential" lens, as I must, there is more than a reasonable argument that counsel satisfied *Strickland*'s deferential standard. *Id.* Because Petitioner can't satisfy prong one of *Strickland*, the Court need not address prong two. The Court will deny Claim One.

### 2. Claim Two: Counsel Failed to Locate 911 Caller

In Claim Two, Petitioner contends that trial counsel provided ineffective assistance by failing to request a continuance to locate the 911 caller who described the incident that led to Petitioner's arrest and conviction. He asserts that the 911 call was an "ultra-piece of exculpatory evidence" because the caller described the suspect as African American, and he (Petitioner) is "best described as white." (D.I. 5 at 6.)

The Superior Court rejected that argument, explaining (in pertinent part):

> In the 911 call, the caller described the aggressor holding the knife as wearing a green shirt and tan shorts. Trial Counsel believed the 911 caller would have been an unfavorable witness for the defense because at the time of [Petitioner's] arrest, he was wearing a green shirt and tan shorts. In addition, [Petitioner] was identified at the scene by a police officer who arrested [Petitioner] shortly thereafter, and later testified at trial. Trial Counsel was in the best position to

7

> decide how and when to proceed with trial, and whether or not to call the 911 witness. The strong presumption that Trial Counsel's actions were professionally reasonable under the circumstances cannot be overcome as deciding whether or not to call a witness that could be hostile to the defense was in the discretion of Trial Counsel.

*Escalera*, 2020 WL 6376646, at *4; *see also Escalera*, 2021 WL 3414230, at *2 (affirming).

Viewing the Delaware Supreme Court's decision under a "doubly deferential" lens, as I must, there is more than a reasonable argument that counsel satisfied *Strickland*'s deferential standard. *Id.* Because Petitioner can't satisfy prong one of *Strickland*, the Court need not address prong two. The Court will deny Claim Two.

### B. Claim Three: Due Process Violation Caused by Admission of Recorded 911 Call

Next, Petitioner contends that his due process rights were violated when the State played the recording of the 911 call describing the incident that led to his arrest. According to Petitioner, the "trial judge did not allow the call to be played in its entirety where the 911 caller gives the operator a description of the man's/suspect's race 'African American.'" (D.I. 5 at 8.)

The record reveals that Petitioner did not exhaust state remedies for Claim Three because he did not present the instant due process argument to the Delaware Supreme Court on direct or post-conviction appeal. At this juncture, any attempt by Petitioner to raise the argument in a new Rule 61 motion in order to appeal any adverse decision would be barred as untimely under Delaware Superior Court Rule 61(i)(1) and as second or successive under Rule 61(i)(2). *See* Del. Super. Ct. Crim. R. 61(i)(1) (establishing a one-year deadline for filing Rule 61 motions); Del. Super. Ct. Crim. R. 61(i)(2) (providing that second or successive motions shall be summarily dismissed unless they meet the pleading requirements of Rule 61(d)(2)(i) or (ii)). Although Rule 61 provides for an exception to its procedural bars if a Rule 61 motion "asserts a retroactively applicable right that is newly recognized after the judgment of conviction is final," no such right

8

is implicated here. Similarly, the exceptions to the bars contained in Rule 61(i)(5) and (d)(2) do not apply to Petitioner's case, because he does not allege actual innocence, lack of jurisdiction, or that a new rule of constitutional law applies. Therefore, Claim Three is procedurally defaulted, which means that the Court cannot review its merits absent a showing of either cause and prejudice or that a miscarriage of justice will result absent such review.

Petitioner does not assert any cause for his default of Claim Three. Given the absence of cause, the Court need not address the issue of prejudice. Regardless, Petitioner cannot demonstrate prejudice because the premise of Claim Three is factually baseless. The record before the Court demonstrates that the jury heard the 911 recording that included a description of the suspect as a "light skinned African-American," and the State reinforced that point when it replayed the recording during its redirect examination of one of the police witnesses. (D.I. 9-11 at 75, 77.)

The miscarriage of justice exception also does not excuse Petitioner's procedural default because he has not provided new reliable evidence of his actual innocence. Accordingly, the Court will deny Claim Three as procedurally barred.

### C. Claim Four: Due Process Violation Stemming from Defective Indictment

In Claim Four, Petitioner argues that his constitutional rights were violated because Count Two of the indictment "failed to charge the intended offense in accordance with the Delaware Criminal Code." (D.I. 5 at 10.) His argument is based on the fact that Count Two of the indictment contains an obvious typo: it says that Petitioner "unknowingly" possessed a deadly weapon, and it should have stated that he "knowingly" possessed a deadly weapon.[4] (*Id.*)

---

[4] Count Two of the indictment provides:

> POSSESSION OF A DEADLY WEAPON DURING THE COMMISSION OF A FELONY in violation of Title 11, Section 1447 of the Delaware Code.

9

Petitioner asserts that his "Constitutional challenge" to the indictment is "based exclusively upon the grand jury protection guaranteed by the United States and State of Delaware's Constitution." (D.I. 5 at 10.) To the extent Petitioner is challenging his conviction for PDWDCF on the ground that his Fifth Amendment right to a grand jury indictment was violated, the argument fails to assert an issue cognizable on federal habeas review because the Fifth Amendment right to a grand jury indictment does not apply to state criminal prosecutions. *See Apprendi v. New Jersey*, 530 U.S. 466, 477 n.3 (2000). To the extent Petitioner asserts a violation of the Delaware Constitution, the argument is not cognizable because it pertains to an alleged error of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).

To the extent Petitioner asserts that the indictment was insufficient because it violated his Fourteenth Amendment right to due process and/or his Sixth Amendment right to be informed of the charges against him, he did not challenge the sufficiency of the indictment on those bases during his trial, on direct appeal, or in his Rule 61 motion. He first challenged the sufficiency of the indictment on post-conviction appeal to the Delaware Supreme Court. Consequently, the Delaware Supreme Court ruled that Claim Four was procedurally barred under Delaware Superior Court Criminal Rule 61(i)(3) because it was not presented to the trial court or in the proceedings

---

> [Petitioner] on or about the 29th of June 2016, in the Count of New Castle, State of Delaware, did unknowingly and unlawfully possess a knife, a deadly weapon as defined by Title 11, Section 222 of the Delaware Code of 1974, as amended, during the commission of Aggravated Menacing, a felony as set forth in Count I of this indictment which is incorporated herein by reference.

(D.I. 9-9 at 15.)

below. *See Escalera*, 2021 WL 34114230, at *2, n.13. The Delaware Supreme Court alternatively held that the Claim was meritless, explaining:

> An indictment must be a "plain, concise and definite written statement of the essential facts constituting the offense charged." The purpose of an indictment is to put the defendant on notice of the crimes with which he has been charged and to preclude a subsequent prosecution for the same offense. Here, the indictment contained a typographical error and incorrectly stated that [Petitioner] violated 11 *Del. C.* § 1447 by *un*knowingly possessing a deadly weapon. But Count II of the indictment cited to § 1447, which defines PDWDCF, and [Petitioner] does not claim that the indictment failed to put him on notice of the crime for which he was charged such that he was unable to prepare a defense. Moreover, the Superior Court corrected the error by properly instructing the jury on the elements of PDWDCF and the required *mens rea*. Under these circumstances, we find no merit to [Petitioner's] claim.

*Escalera*, 2021 WL 3414230, at *2.

In view of the State's assertion here that Petitioner exhausted state remedies for Claim Four on post-conviction appeal, and in view of the Delaware Supreme Court's alternative merits ruling, the Court will consider Claim Four under § 2254(d).

The Sixth Amendment guarantees all criminal defendants in state prosecutions the right "to be informed of the nature and cause of the accusation." *Argersinger v. Hamlin*, 407 U.S. 25, 27–28 (1972); U.S. Const. amend. VI. Likewise, the due process clause of the Fourteenth Amendment requires that an accused be informed of the specific charge against him, *see Cole v. Arkansas*, 333 U.S. 196, 201 (1948), and that reasonable notice "sufficiently apprises the defendant of what he must be prepared to meet." *Russell v. United States*, 369 U.S. 749, 763 (1962); *see also In re Oliver*, 333 U.S. 257, 273 (1948) (explaining that a "person's right to reasonable notice of a charge against him . . . [is] basic in our system of jurisprudence"). To determine whether an indictment satisfies due process, a court must ask whether the indictment: (1) contains the elements of the offense charged; (2) provides the defendant adequate notice of the charges against which he

11

must defend; and (3) protects against double jeopardy by enabling the defendant to plead an acquittal or conviction to bar future prosecutions for the same offense. *See Russell*, 369 U.S. at 763–64; *United States v. Hopkins*, 517 F.2d 420, 425 (3d Cir. 1975) (due process requires that "the indictment . . . fairly apprise the defendant of the charges to which he was subjected and of the basic facts upon which they were founded and provide[] adequate protection for double jeopardy purposes").

The Delaware Supreme Court's denial of Petitioner's argument was not contrary to, nor based upon an unreasonable application of, clearly established federal law.[5] Although Count Two of the indictment incorrectly set forth the *mens rea* for PDWDCF as "unknowing possession," Petitioner had sufficient notice of the PDWDCF charge because Count Two cited the correct statute – 11 Del. C. § 1447. Additionally, the Superior Court corrected the error by properly instructing the jury on the elements of PDWDCF, stating:

> In order to find [Petitioner] guilty of possession of a deadly weapon during the commission of a felony, there again are three elements, each of which must be established beyond a reasonable doubt: one, that [Petitioner] committed aggravated menacing, a felony; and, two, [Petitioner] possessed a deadly weapon during the commission of aggravated menacing; and, three, [Petitioner] acted knowingly.

(D.I. 9-11 at 87–88.) Given this record, the Court cannot conclude that Petitioner received constitutionally inadequate notice of the PDWDCF charge against him, that he was hindered from defending that charge, or that the jury considered incorrect elements of the PDWDCF charge.

Accordingly, the Court will deny Claim Four.

## IV. CERTIFICATE OF APPEALABILITY

---

[5] The Delaware Supreme Court did not cite to United States Supreme Court precedent in assessing the merits of Petitioner's due process claim, but it appropriately relied on its own cases, which do not contradict clearly established federal law and set forth the proper standard.

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that the Petition does not warrant relief. In the Court's view, reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court will not issue a certificate of appealability.

## V.  CONCLUSION

For the reasons discussed, the Court will deny the Petition without holding an evidentiary hearing or issuing a certificate of appealability. An appropriate Order will be entered.